**In the United States District Court
For the Western District of Texas
Austin Division**

| | |
|---|---|
| **Natacha Ingonga Bolumbu**,<br><br>    Petitioner,<br><br>v.<br><br>**William Barr, et al.**,<br><br>    Respondents. | No. 1:20-cv-00392-RP-AWA |

### Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus

This case should be dismissed under Rule 12(b)(1) because this Court lacks subject matter jurisdiction for five independent reasons: (1) this Court is precluded by 8 U.S.C § 1252 from reviewing Bolumbu's mandatory detention during removal proceedings or the parole denial decision; (2) Bolumbu's condition of confinement claims are not properly raised under the habeas statute; (3) Bolumbu has not exhausted administrative remedies regarding her right to counsel claim; (4) the APA precludes review of discretionary parole decisions; and (5) without jurisdictional bases for review under the habeas statute and the APA, the United States has not waived its sovereign immunity for direct constitutional claims. Alternatively, if this Court exercises subject matter jurisdiction, the petition should be dismissed under Rule 12(b)(6). Petitioner fails to state a claim for habeas relief. For these reasons, Petitioner's Writ of Habeas Corpus should be dismissed and denied.

### I.  FACTS AND PROCEDURAL HISTORY

Petitioner Natacha Bolumbu has been detained at the T. Don Hutto Detention Center since January 21, 2020.  *See* **Exhibit A**, Fowler Decl. ¶¶ 3-5. **Bolumbu concedes that, as an "arriving**

**alien," she "is subject to detention pursuant to 8 U.S.C. 1225(b)(1)(B)(iii)(IV)."** *See* Petition for Writ of Habeas Corpus, Dkt. 1 ¶ 22.

Contrary to Petitioner's allegations, Petitioner did not undergo a credible fear interview upon her arrival. USCIS attempted to schedule a credible fear interview, but none of the service providers were able to facilitate a Lingala interpreter for the interview. *See* **Exhibit B**, USCIS Memorandum Accordingly, to avoid further delay and have all possible avenues to have Bolumbu's claim of fear be heard, she was issued a Form I-862 Notice to Appear. *Id.* On February 27, 2020, Bolumbu was served the Notice to Appear by the Houston Asylum Office. **Exhibit A,** Fowler Decl. ¶¶ 6–7; **Exhibit C**, Notice to Appear.

Pursuant to ICE guidance, upon the issuance of the Notice to Appear, Bolumbu was considered for parole. **Exhibit A,** Fowler Decl. ¶ 8. On March 2, 2020, she was served a Parole Advisal and Scheduling Notice (ICE Form 71-012), which explains the factors considered by ICE when adjudicating parole. *Id.*; *see also* **Exhibit D,** Parole Advisal and Scheduling Notice. The advisal also notified Bolumbu that a parole interview had been scheduled for March 10, 2020, and that any documents she wanted ICE to consider must be filed in advance. *Id*.

On March 10, 2020, ICE issued a Notification Declining to Grant Parole notifying Bolumbu of ICE's decision to deny parole. *Id.* ¶ 13; *see also* **Exhibit E,** Parole Denial Notice. ICE determined that Bolumbu is barred from asylum pursuant to 8 C.F.R. 208.13(c)(4) as she entered the United States after July 16, 2019. *Id.* ¶ 14. As a result, the immigration relief available to Bolumbu is significantly limited, a factor which elevates her flight risk. *Id.* **Bolumbu admits that it is "unlikely that she w[ill] be granted asylum," in light of 8 C.F.R. 208.13(c)(4).** *See* Petition for Writ of Habeas Corpus, Dkt. 1 ¶24.

Bolumbu's next Immigration Court hearing is scheduled for May 27, 2020. **Exhibit A,** Fowler Decl. ¶ 15.

Contrary to Bolumbu's allegations, Bolumbu has not been denied access to counsel. In light of the COVID-19 crisis, the Hutto Detention Center is providing robust precautionary measures in accordance with CDC and ICE guidance. *See generally* **Exhibit A**, Fowler Decl., **Exhibit F**, March 27, 2020 Memorandum on COVID-19 Action Plan. The Hutto Detention Center has implemented precautionary measures to protect all detainees, staff, and visitors from exposure to COVID-19, and Bolumbu is receiving the benefit of these measures. *Id*. The detention center has taken steps to ensure a line of communication between the detainees and their respective legal representatives, including free phone calls from detainees to their immigration attorneys upon request. **Exhibit A**, Fowler Decl. ¶ 18. Counsel for all detainees are also being required to wear personal protective equipment to meetings with detainees as an additional precaution. *See* **Exhibit F**.[1] This is a protective measure, not an impediment to access.

## II. BACKGROUND ON EXPEDITED REMOVAL AND CREDIBLE FEAR REVIEW

If an immigration officer determines that an "alien"[2] is inadmissible under 8 U.S.C. § 1182(a)(7), the officer *shall* order the alien removed from the United States *without further hearing or review* and *shall detain* the alien pending removal. 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(2)(iii). If the alien indicates an intention to apply for asylum or a fear of persecution, the immigration officer shall refer the alien for an interview by an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(i) and (ii). Pending the credible fear determination by an asylum officer

---

[1] Contrary to Petitioner's allegations, Respondents have not denied Petitioner access to her counsel based on the *type* of protective equipment (e.g. N-95 mask or otherwise) that counsel chooses to use.

[2] An "alien" under the relevant portion of this statute is referring to an alien who, *inter alia*, (1) has not been admitted or paroled into the United States; and (2) has not affirmatively shown, to the satisfaction of an immigration officer, that he has been physically present in the United States for the two-year period immediately prior to the date of the determination of inadmissibility. 8 U.S.C. §§ 1225(b)(1)(A)(i) & (iii)(II); 8 C.F.R. § 235.3(b)(1)(ii). This designation shall be in the "sole and unreviewable discretion of the Attorney General and may be modified at any time." 8 U.S.C. § 1225(b)(1)(A)(iii)(I); 8 C.F.R. § 235.3(b)(1)(ii).

and any review of that determination by an immigration judge,[3] the alien *shall* be detained. 8 C.F.R. § 235.3(b)(4)(ii). If the asylum officer determines at the time of the interview that an alien has a credible fear of persecution, the alien *shall* be detained for further consideration of the application (for asylum). 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). Any arriving alien who is placed in removal proceedings pursuant to the issuance of a Notice to Appear *shall* be detained in accordance with section 1225(b) of the Act. 8 C.F.R. § 235.3(c). Parole of such an alien shall only be considered in accordance with 8 U.S.C. § 1182(d)(5). *Id*. The Supreme Court recently re-affirmed this reading of the statute. *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). In sum, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under the Immigration and Nationality Act. 8 U.S.C §§ 1252(e) and (g).

### III. LAW AND ARGUMENT

#### A. This Court Lacks Subject Matter Jurisdiction over Petitioner's Claims.

Respondents move to dismiss first under Rule 12(b)(1)[4] due to lack of subject matter jurisdiction for five independent reasons: (1) this Court is precluded 8 U.S.C §§ 1252(e) and (g)

---

[3] The Attorney General shall provide upon the alien's request prompt review by an immigration judge of a negative credible fear determination. 8 U.S.C. § 1225(b)(1)(B)(ii)(III). Such review shall be completed as expeditiously as possible, but no later than seven days after the date of determination, and shall include an opportunity for the alien to be heard and questioned by the immigration judge, either in person or by telephonic or video connection. *Id*. Any alien subject to these procedures shall be detained pending a final determination of credible fear. 8 U.S.C. § 1225(b)(1)(B)(ii)(IV). If found not to have such a fear, the alien shall be detained until removed. *Id*.

[4] A motion to dismiss filed under Rule 12(b)(1) challenges subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and lack the power to adjudicate claims absent jurisdiction conferred by the Constitution or statute. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citing *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). Within the context of a challenge to subject matter jurisdiction brought under Fed. R. Civ. P. 12(b)(1), the party seeking to invoke the court's jurisdiction bears the burden of establishing such jurisdiction exists. *Ala.-Coushatta Tribe of Tex. v. U.S.*, 757 F.3d 484, 487 (5th Cir. 2014); *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014). Furthermore, the court need not accept allegations in the complaint as true; rather, the court may consider facts and exhibits outside of the pleadings and may resolve

from reviewing Bolumbu's mandatory detention during removal proceedings; (2) Petitioner's condition of confinement claims are not properly raised under the habeas statute; (3) Petitioner has not exhausted administrative remedies for her right to counsel claim; and (4) the APA precludes review of discretionary parole decisions, and (5) without jurisdictional bases for review under the habeas statute and the APA, the United States has not waived its sovereign immunity for direct constitutional claims.

> *1. This Court Lacks Jurisdiction to Review Any Claim Arising from the Attorney General's Decision to Commence Expedited Removal Proceedings.*

This Court lacks jurisdiction over these claims as they relate to Petitioner's expedited removal proceedings. As an arriving alien, Bolumbu's detention during removal proceedings is mandatory, and judicial review is precluded by statute. 8 U.S.C. §§ 1225(b)(1)(A)(i), 1252(e), 1252(g); 8 C.F.R. § 235.3(c). On March 2, 2020, petitioner was served the Notice to Appear by the Houston Asylum Office. **Exhibit A,** Fowler Decl. ¶¶ 6–7; **Exhibit C**, Notice to Appear. During this process, detention is mandatory. 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. §§ 235.3(c), 208.30(f). **Bolumbu even concedes that she is subject to detention.** *See* **Dkt. 1 ¶22.**[5]

---

factual questions without converting the motion into one for summary judgment. *State of Ala. ex rel. Baxley v. Woody*, 473 F.2d 10, 12 (5th Cir. 1973). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001)).

[5] Plaintiff is an "arriving alien" because she applied for admission at a port of entry. **Exhibit C,** Notice to Appear. All aliens "arriv[ing] in the United States" or "present in the United States [without having] been admitted" are considered "applicants for admission," who "shall be inspected by immigration officers." 8 U.S.C. §§ 1225(a)(1), (3). An "arriving alien" is defined in regulation, in relevant part, as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry." 8 C.F.R. § 1.2; 69 Fed. Reg. 48877, 48878 (Aug. 11, 2004).

Under 8 U.S.C. § 1225(b)(1), arriving aliens in expedited removal proceedings, such as Petitioner, are "normally ordered removed 'without further hearing or review.'" *See Jennings v. Rodriguez*, 138 S. Ct. 830, 833 (2018) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). However, if an alien in expedited removal proceedings "conveys an intent to apply for asylum or expresses a fear of persecution in his home country, all removal proceedings must stop 'until the alien has been referred' for a credible fear interview before an asylum officer." *Rosa*, Cause No. 1:19-CV-00138 (Lead), 2019 WL 5191095, at *3 (S.D. Tex. Oct. 15, 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)–(ii), (b)(1)(B)(i)); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 797 (W.D. Tex. 2015). If the alien does not establish a credible fear, the

The "sole function" of habeas is to "grant relief from *unlawful imprisonment or custody* and it cannot be used properly for any other purpose." *Pierre*, 525 F.2d at 935–36 (emphasis added). The Court lacks habeas jurisdiction to grant Petitioner's requested relief of release because she is an arriving alien subject to mandatory detention under 8 U.S.C. § 1225(b), absent a decision by DHS to exercise its discretionary parole authority under 8 U.S.C. § 1182(d)(5), and 8 C.F.R. § 212.5, which the agency declined to use in this case for public safety and foreign policy reasons. Thus, habeas is unavailable here because DHS has authority to detain Petitioner, and this Court has no jurisdiction to review DHS's discretionary denial of parole.

ICE determined that Bolumbu will be barred from asylum pursuant to 8 C.F.R. 208.13(c)(4) as she entered the United States after July 16, 2019. **Exhibit A,** Fowler Decl. ¶ 14. As a result, the immigration relief available to Bolumbu is significantly limited, a factor which elevates her flight risk. *Id.* Bolumbu even admits that it is "unlikely that she w[ill] be granted asylum," in light of 8 C.F.R. 208.13(c)(4). *See* Petition for Writ of Habeas Corpus, Dkt. 1 ¶24.

The Court lacks jurisdiction to review this parole determination. *See Rodrigues v. McAleenan*, No. 20-CV-0139, 2020 WL 363041 (N.D. Tex. Jan. 22, 2020) (dismissing TRO for lack of jurisdiction to review claims related to 8 C.F.R. 208.13(c)(4)); *Nianga v. Wolfe*, No. 30-

---

asylum officer "shall order the alien removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I).

When an alien is referred for full removal proceedings under 8 U.S.C. § 1229a, "the alien may file an application for asylum and withholding of removal." 8 C.F.R. § 1208.30(g)(2)(iv)(B). Under 8 U.S.C. § 1225(b)(1)(B)(ii), aliens in expedited removal proceedings "shall be detained" while that alien's asylum application is pending. *Jennings*, 138 S. Ct. at 833; *see also* 69 Fed. Register 48877, 48879 ("8 U.S.C. 1225(b)(1)(B)(ii)[] directs that if a credible fear has been established, the alien shall be detained for further consideration of the protection claim or claims."). Moreover, aliens in expedited removal proceedings—"including those aliens who are referred after a positive credible fear determination to an immigration judge for proceedings under [8 U.S.C. § 1229a]"—are "not eligible for bond, and therefore are not eligible for a bond redetermination before an immigration judge." 69 Fed. Reg. 48877, 48879. Nor are such aliens entitled to statutory periodic bond hearings under § 1225(b). *See Rosa*, 2019 WL 5191095, at *15 (citing *Jennings*, 138 S. Ct. at 842). "However, aliens determined to have a credible fear may be considered by DHS for parole in accordance with [8 U.S.C. § 1182(d)(5)] and 8 CFR 212.5 [Parole of aliens into the United States]."4 69 Fed. Reg. 48877, 48880–81.

CV-0146-G, 2020 WL 415927 (N.D. Tex. Jan. 27, 2020) (dismissing TRO and complaint for lack of jurisdiction to review claims related to 8 C.F.R. 208.13(c)(4)); *Rodrigues v. USDHS*, 20-CV-0139, 2020 WL 777278 (N.D. Tex., Feb. 18, 2020) (dismissing complaint for lack of jurisdiction to review claims related to 8 C.F.R. 208.13(c)(4)).

> 2. *Petitioner May Not Challenge the Conditions of Confinement through a Habeas Petition Seeking Immediate Release.*

Additionally, in the Fifth Circuit, Petitioner's condition of confinement claim is not cognizable through a petition for writ of habeas corpus. Specifically, her right to counsel claim in light of ICE's response to COVID-19 fails because habeas is not the appropriate vehicle to challenge conditions of detention in the Fifth Circuit.

The Fifth Circuit has held that "habeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Patterson v. Johnson*, 184 F.3d 816 (5th Cir. 1999) (citing *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976)); *accord Rosa v. McAleenan*, 2019 WL 5191095, at *14. "Habeas petitions can only 'grant relief from unlawful imprisonment or custody' and cannot be used to challenge 'conditions of confinement.'" *Schipke v. Van Buren*, 239 F. App'x 85, 85–86 (5th Cir. 2007)); *Poree v. Collins*, 866 F.3d 235, 243 (5th Cir. 2017) (noting the "instructive principle [is] that challenges to the fact or duration of confinement are properly brought under habeas, while challenges to the conditions of confinement are properly brought under [civil rights actions]"); *Benitez-Garay v. Dep't of Homeland Sec.*, No. SA-18-CA-422-XR, 2019 WL 542035, at *5 (W.D. Tex. Feb. 8, 2019) ("Claims . . . asserting that treatment while in custody renders that custody illegal, are claims that state and federal prisoners typically raise in federal court pursuant to 42 U.S.C. § 1983 and *Bivens* [] and fall outside the historical core of the writ of habeas corpus."). Thus, "[a]llegations that challenge the fact or duration of confinement are

7

properly brought in habeas petitions, while allegations that challenge rules, customs, and procedures affecting conditions of confinement are properly brought in civil rights actions." *Schipke v. Van Buren*, 239 F. App'x. 85, 85–86 (5th Cir. 2007).

The Fifth Circuit follows a bright line rule: "If a favorable determination . . . would not automatically entitle [the detainee] to accelerated release, . . . the proper vehicle is a [civil rights] suit." *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997). Here, if Respondents lifted its restriction that counsel for detainees utilize personal protective equipment such as masks and gloves, Bolumbu would not be automatically entitled to accelerated release. Accordingly, a writ of habeas corpus is not the proper vehicle for review.

In *Spencer v. Bragg*, 310 F. App'x 678 (5th Cir. 2009), a petitioner challenged the conditions of his confinement under § 2241. He argued that he was denied access to his legal notes, which in turn negatively impacted his § 2255 proceeding, which could have resulted in an accelerated release from prison. *Id*. The Fifth Circuit affirmed the dismissal of the petition and stated that the proper vehicle for the claim was a civil rights action. *Id*. (citing Carson, 112 F.3d at 820–821); *see also Awwad v. Willis,* No. EP-17-CV-213-DCG, 2017 WL 3433544, at *6 (W.D. Tex. Aug. 8, 2017) (denying habeas relief because "an access-to-the-courts claim does not challenge the fact or duration of a prisoner's confinement" and was therefore not properly addressed under habeas statute); *see also Sacal-Micha v. Longoria*, et al., 1:20-CV-37, 2020 WL 1815691 (S.D. Tex. Apr. 9, 2020).[6] As the Fifth Circuit does not recognize conditions of

---

[6] The Fifth Circuit and district courts have similarly applied these principles to dismiss habeas actions that were unrelated to the cause of detention and challenged the adequacy of medical care or alleged exposure to dangerous conditions. *See*, *e.g.*, *Schipke*, 239 F. App'x. at 85–86; *Spencer v. Bragg*, 310 F. App'x 678, 679 (5th Cir. 2009); *Hernandez v. Garrison*, 916 F.2d 291, 293 (5th Cir. 1990); *Springer v. Underwood*, No. 3:19-cv-1433-S-BN, 2019 WL 3307220, at *2 (N.D. Tex. 2019), *R&R adopted*, 2019 WL 3306130 (N.D. Tex. 2019); *Benitez-Garay*, 2019 WL 542035, at *5; *United States v. Robinson*, 2009 WL 1507130, at *4 (S.D. Tex. 2009).

confinement claims as properly raised under the habeas statute, this Court should dismiss the claim for lack of jurisdiction.

> 3. *Petitioner has not exhausted administrative remedies regarding her right to counsel claim.*

Even if § 2241 were the proper vehicle for Petitioner's conditions-of-confinement claim, this Court lacks jurisdiction to review the specific claim related to Petitioner's right to counsel. In removal proceedings, aliens do have a statutory right to retain counsel at their own expense. 8 U.S.C. § 1362. The Constitution protects this right, although it arises under the Due Process Clause of the Fifth Amendment and not under the Sixth Amendment right to counsel in criminal proceedings. *Barthold v. INS*, 517 F.2d 689, 690 (5th Cir. 1975). Judicial review in the removal context is heavily circumscribed by 8 U.S.C. § 1252(b)(9). Section 1252(b)(9) operates as an "unmistakable 'zipper' clause" designed to "consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien" through the preordained administrative process. *Duron v. Johnson*, 898 F.3d 644, 647 (5th Cir. 2018) (citing *Aguilar v. ICE*, 510 F.3d 1, 9–10 (1st Cir. 2007)) (emphasis in original).

In *Aguilar*, the First Circuit reviewed, *inter alia*, claims that the petitioners' detention and subsequent transfer by the government infringed their rights to counsel by barring access to lawyers, interfering with preexisting attorney-client relationships, and making it difficult to secure counsel of their choosing. *Aguilar*, 510 F.3d at 13. The threshold question in that case was whether those claims arose from removal and if so, whether they could be deemed independent of, or collateral to, the removal process. *Id*. The First Circuit found that the alien's right to counsel is part of removal proceedings, and therefore, any right-to-counsel claim must be administratively exhausted. *Id*.

Right to counsel in removal proceedings is "inextricably intertwined with" the administrative process that Congress designed. *Id*. Allowing aliens to ignore the channeling provisions of § 1252(b)(9) by bringing right-to-counsel claims directly to district court would result in precisely the type of fragmented litigation that Congress sought to forbid. 8 U.S.C. § 1252(b)(9); *see also Aguilar,* 510 F.3d at 13–14. Requiring the administrative exhaustion of these claims does not "foreclose all meaningful judicial review." *Aguilar,* 510 F.3d at 14. The alien has the statutory right to raise these claims before the Immigration Judge, the Board of Immigration Appeals ("BIA"), and ultimately the Court of Appeals. *Id*. The alien can receive effective relief for alleged violations of the right to counsel "simply by navigating the channels deliberately dredged by Congress." *Id*.

The proper channel for Petitioner's right to counsel claim in this case, therefore, is the Immigration Judge. A Notice to Appear has been issued and she is scheduled for a removal hearing. At that time, she may request additional time to consult with counsel and prepare her case, and the Immigration Judge may afford that time to her. If she is unsatisfied with the Immigration Judge's handling of her case, she can appeal the decision to the BIA. If the BIA affirms the Immigration Judge's decision, Petitioner may appeal that decision to the Fifth Circuit. For these reasons, this Court lacks subject matter jurisdiction to review Petitioner's right-to-counsel claim, and it should be dismissed.

> 4. *This Court Lacks Jurisdiction to Review Petitioner's APA Claims.*

Bolumbu requests that this Court review ICE's denial of her request for parole on the ground that ICE's decision was "arbitrary, capricious, and an abuse of discretion" under the APA. Dkt. 1, ¶ 31. "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Redeemed Christian Church of God v. USCIS*, 331 F. Supp. 3d 684, 694 (S.D. Tex. 2018) (citing *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).

Section 702 of the APA "waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review." *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014) (quotation omitted). To establish a waiver of sovereign immunity under Section 702, a plaintiff "must identify some 'agency action' affecting him in a specific way" and "show that he has suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute." *Id.* at 489 (quotation omitted). The APA waives sovereign immunity under the APA's "general provisions" where review is sought of "final agency action." *Id*. Judicial review is unavailable, however, "to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." *Texas v. United States*, 787 F.3d 733, 755 (5th Cir. 2015) (citing 5 U.S.C. § 701(a)).

In this case, the Court lacks jurisdiction over Petitioner's APA claims for two reasons: *first*, Section 1252(a)(2)(B)(ii) strips all courts of jurisdiction to review agency actions regarding Section 1182(d)(5) parole decisions, and *second*, Section 1182(d)(5) specifically grants DHS discretion over parole decisions regarding aliens, and the APA does not apply to agency action committed to agency discretion by law.

The Fifth Circuit and district courts have held that courts lack jurisdiction under 8 U.S.C. 1252(a)(2)(B)(ii) to review discretionary decisions to deny parole into the United States. *See Loa-Herrera v. Trominski*, 231 F.3d 984, 990-91 (5th Cir. 2000) ("Congress, however, has denied the district court jurisdiction to adjudicate deprivations of the plaintiffs' statutory and constitutional rights to parole.") (citing 8 U.S.C. § 1182(d)(5)(A)); *Palacios v. Dep't of Homeland Sec.*, 407 F. Supp. 3d 691, 698 (S.D. Tex. 2019) ("[T]his court lacks jurisdiction to review denials of parole under the Immigration and Nationality Act ["INA"] because these actions are committed to agency discretion by law.");*Maldonado v. Macias*, 150 F. Supp. 3d at 795 ("Under § 1252(a)(2)(B)(ii),

11

this Court has no jurisdiction to review the Attorney General's discretionary decision . . . [over] the resulting denial of parole."). Accordingly, this Court lacks jurisdiction to review ICE's decision to deny Petitioner parole into the United States.

Additionally, as this Court noted, "Section 1182(d)(5)(A) places the decision of granting parole within the discretion of DHS. *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 491 n.1 (5th Cir. 2015). "Regulations provide further requirements and procedures for parole." *Ramirez-Mejia*, 794 F.3d at 491 (citing 8 C.F.R. § 212.5). For example, parole is authorized for only certain aliens "provided the aliens present neither a security risk nor a risk of absconding." *See* 8 C.F.R. § 212.5(b). And another court in this district also recently held, in a case involving the denial of re-parole, that "court[s] lacks[] jurisdiction to review denials of parole under the [INA] because these actions are 'committed to agency discretion by law.'" *Palacios*, 407 F. Supp. 3d at 698 (citing 5 U.S.C. § 701(a)(2); 8 U.S.C. § 1182(d)(5)(A)).

In this case, ICE declined to exercise its discretionary parole authority because Bolumbu is barred from asylum pursuant to 8 C.F.R. 208.13(c)(4) as she entered the United States after July 16, 2019. **Exhibit A,** Fowler Decl. ¶ 14. As a result, the immigration relief available to Bolumbu is significantly limited, and this factor elevates her flight risk. *Id. See also Hassan v. Holder*, No. 11 CIV. 7157 LGS, 2014 WL 1492479, at *10 (S.D.N.Y. Apr. 15, 2014) (immigration judge did not disregard law or legal standards at bond hearing "in light of the reasoning set out by the [immigration judge]" that "identified factors that suggested that Petitioner did pose at least a flight risk, including . . . the unlikelihood that Petitioner would prevail on his pending applications for immigration relief"); *see also Matter of Ellis*, 20 I&N Dec. 641, 643 (BIA 1993) (citing Matter of Andrade, 19 I&N Dec. 488, 490 (BIA 1987)) (where alien has no relief available, he poses a flight risk.). These decisions were committed to agency discretion.

> 5. *The United States and its Agencies Have not Waived Sovereign Immunity over Petitioner's Remaining Claims.*

To the extent Petitioner asserts direct causes of action under the Constitution, she has not shown that she is permitted to do so in the Fifth Circuit. "Although there have been a few notable exceptions, the federal courts, and this Circuit in particular, have been hesitant to find causes of action arising directly from the Constitution." *Alexander v. Trump*, 753 F. App'x 201, 206 (5th Cir. 2018) (rejecting a freestanding constitutional complaint against the FBI). *See also Hearth, Inc. v. Dep't of Public Welfare*, 617 F.2d 381, 382 (5th Cir. 1980) (citing *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), as one "notable exception" to the general rule). Recognizing a cause of action directly under the Fifth Amendment to order Plaintiffs' release would be a departure from Fifth Circuit precedent. *See Sacal-Micha*, 2020 WL 1815691, at *5–6.[7]

"Suits against federal defendants (*i.e.*, federal agencies and federal officials acting in their official capacities) are suits against the United States." *Evanicky v. FEMA*, 2019 WL 3943024, at *2 (S.D. Tex. 2019). The United States is immune from suit except in the manner and to the degree that sovereign immunity has been waived. *FDIC v. Meyer*, 510 U.S. 471, 477 (1994); *In re FEMA*, 668 F.3d 281, 287 (5th Cir. 2012). "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *St. Tammany Parish, ex rel. Davis v. FEMA*, 556 F.3d 307, 316 (5th Cir. 2009). A waiver of the Government's sovereign immunity must be "unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 116 S. Ct. 2092, 2096 (1996). The "absence of such a waiver is a jurisdictional defect." *Wagstaff v. U.S. Dept. of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007).

---

[7] Petitioners' claims in the case at bar, seeking *release* from confinement for alleged violation of constitutional rights based on the conditions of confinement, is distinguished from a *Bivens* claim seeking damages for violation of constitutional rights based on conditions of confinement. *Carlson v. Green*, 446 U.S. 14 (1980).

To the extent Petitioner seeks a judicial declaration under the Declaratory Judgment Act ("DJA"), the Fifth Circuit and district courts have held that the "[DJA] is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present." *Rogers v. Ingolia*, 424 F. App'x 283, 288 (5th Cir. 2011); *Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 278 (5th Cir. 2010); *accord Parveen v. McAleenan*, 2019 WL 5616728, at *5 (S.D. Tex. 2019) (noting that the DJA does not "provide an independent basis for subject matter jurisdiction," "[r]ather, a federal court must have jurisdiction under another federal statute to then issue a Declaratory Judgment"). Further, the DJA, even in conjunction with the federal question statute, 28 U.S.C. § 1331, does "not create an independent private right of action." *Mahogany v. Louisiana State Supreme Court*, 262 F. App'x. 636, 637, n.2 (5th Cir. 2008).

### B. Even if There Were Jurisdiction, Petitioner Has Failed to State a Legally Cognizable Claim under Rule 12(b)(6).

Even if this Court were to assume jurisdiction in this case, the Petition should be dismissed under Rule 12(b)(6) because it fails to state a legally cognizable claim. Fed. R. Civ. P. 12(b)(6); *Ramming v. U.S.*, 281 F.3d at 161.

#### 1. *Petitioner Fails to State a Claim under the Fifth Amendment Regarding the Denial of Parole.*

Bolumbu is not being held indefinitely, as the removal proceedings will eventually come to an end, resulting in either removal from the United States or release from custody with permission to remain in the United States. Petitioner challenges under the Fifth Amendment the discretionary denial of her request for parole, which has resulted in her continued detention. The Supreme Court has long recognized that detention during removal proceedings is a constitutionally valid aspect of the removal process. *Demore v. Kim*, 538 U.S. at 510, 523 (2003). Removal proceedings would be in vain if those accused could not be held in custody pending the inquiry into their true character. *Id*. (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)); *see*

14

*Reno v. Flores*, 507 U.S. at 292, 305–06 (1993). The Supreme Court recently reaffirmed this holding in *Jennings v. Rodriguez*, 138 S. Ct. at 844–45, finding that the expedited removal statutes found at §§ 1225(b)(1) and (b)(2) mandate detention of aliens *throughout* the completion of applicable proceedings and not just until the moment those proceedings begin. *Id.* at 845. The due process rights of aliens are determined by the procedures established by Congress and the decisions of executive or administrative officers, acting within their powers expressly conferred by Congress are the due process of law. *Gisbert v. A.G.*, 988 F.2d at 1443.

In a substantive due process claim, the "threshold question is whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 672 n.3 (5th Cir. 2007). Petitioner's substantive due process claim should be dismissed under Rule 12(b)(6) because she alleges no facts from which this Court may reasonably conclude that Respondents engaged in outrageous or egregious conduct that shocks the conscience when they denied her parole request. *See Iqbal*, 556 U.S. at 678; *Aguilar*, 510 F.3d at 21. "The 'shock the conscience' standard erects a high hurdle for would-be claimants." *Aguilar*, 510 F.3d at 21. "This mantra reflects a realization that challenges to executive action must be viewed through the prism of 'a particular need to preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to what we have called a font of tort law.'" *Id.* (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

Moreover, the Fifth Circuit has held that "the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest." *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004). Further, the Fifth Circuit has applied this principle to reject numerous due process-based challenges stemming from the denial of discretionary relief. *See*, *e.g.*,

*Reynoso-Ramirez v. Barr*, 786 F. App'x 473 (5th Cir. 2019) ("[Petitioner] does not have a constitutionally protected liberty interest in the discretionary relief of cancellation of removal or in eligibility for that relief. Thus, her due process rights are not implicated by the agency's decision.") (internal citation omitted); *Ramos-Portillo v. Barr*, 919 F.3d 955, 963 (5th Cir. 2019) ("The relief that [Petitioner] seeks—the motion to reopen—is purely discretionary. Accordingly [he] had 'no liberty interest at stake,' and the BIA did not abuse its discretion in dismissing his appeal.") (internal citation omitted); *Rodriguez-Salazar v. Sessions*, 691 F. App'x. 173, 174 (5th Cir. 2017) ("[Petitioner's] . . . due process rights are not implicated here because the discretionary relief from removal 'is not a liberty or property right that requires due process protection.'").

Notably, the Fifth Circuit has held in the context of Section 1226(e) that "[t]he Attorney General's *discretionary judgment regarding the application of* parole [under Section 1226(a)]—including the manner in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, *and constitutional constraints*—is '*not . . . subject to review*.'" *Loa-Herrera v. Trominski*, 231 F.3d 984, 991 (5th Cir. 2000) (citing § 1226(e)) (emphasis added). In other words, if a detained alien cannot bring a Constitutional challenge against DHS based on a discretionary parole denial under Section 1226(a) and (e), so too should Petitioner be barred from bringing a Constitutional challenge against DHS based on a discretionary parole denial under Section 1182(d)(5).

Petitioner has been provided due process under the Fifth Amendment. She has not shown that her mandatory detention during removal proceedings is unlawful, unreasonable, or punitive. The fact that Petitioner has been detained longer than desired does not violate a statutory or due process right. Substantive due process bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. *Marco Outdoor Advert., Inc.*

*v. Reg'l Transit Auth.*, 489 F. 3d 669, 672 n.3 (5th Cir. 2007). Petitioner has not shown that she has been subjected to wrongful or arbitrary government actions. This claim should be dismissed.

   2. *Petitioner fails to state a claim under the Fifth Amendment for a violation of her right to counsel.*

Petitioner claims that the facility's restrictions to in-person and telephonic contact in light of COVID-19 violate her Fifth Amendment right to counsel. For cases asserting that conditions of confinement are so unsafe as to violate the Constitution, a plaintiff must show that the precautions taken to prevent harm are "objectively unreasonable." *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

The Fifth Circuit examined a right to counsel claim in the criminal context that occurred during the aftermath of Hurricane Katrina. *See Waganfeald v. Gusman*, 674 F.3d 475, 485 (5th Cir. 2012). Prisoners filed a civil suit under 42 U.S.C. § 1983 for violations, inter alia, of the Sixth Amendment based on their inability to contact their counsel by phone from inside the facility. The Fifth Circuit found that the lower court erred by not granting qualified immunity, acknowledging that a detainee's right to telephone access is "subject to rational limitations in the face of legitimate security interests" of the detention facility. *Id*. As a general matter, the Court noted, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id*. Prison officials, the Court found, are therefore "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline to maintain institutional security." *Id*. The Court found that the phone conditions were exacerbated by the emergency conditions that were presented during the approach, landfall, and aftermath of Hurricane Katrina. *Id*. In that regard, the Court found that the officers did not act in an

objectively unreasonable manner under clearly established law. *Id.*; *see also See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

Like the facility in *Waganfeald*, the Hutto detention facility is dealing with emergency conditions due to the COVID-19 pandemic. Here, the Hutto Detention Center is providing robust COVID-19 precautionary measures in accordance with CDC and ICE guidance. *See generally* **Exhibit A**, Fowler Decl., **Exhibit F**, March 27, 2020 Memorandum on COVID-19 Action Plan. Respondents have acted reasonably in the face of an unprecedented pandemic. That is all the Constitution requires. Per *Waganfeald*, the facility's decision related to communication with counsel is not objectionably unreasonable. *See also Hassan v. Prator*, No. 14–CV–2825, 2017 WL 1682585, *3 (W.D. La. 2017) (citing *Waganfeald* and finding that the Constitution does not mandate that the facility adopt a plan that is best suited for the plaintiff, rather it affords the facility the discretion to adopt a reasonable plan that suits the needs of security and order).

Petitioner notes that the restrictions on her interaction with counsel stem from the facility's response to the COVID-19 pandemic. She has not alleged that Respondents are preventing her from consulting with counsel, only that the situation is not ideal for attorney-client communication. Thus, Petitioner fails to state a claim for a violation of her substantive due process rights, and that claim should be dismissed under Rule 12(b)(6). Even if this Court were to find a violation of Petitioner's right to counsel under the Fifth Amendment, the remedy would not be release.

3. *Petitioner Has Failed to State a Claim that Respondents Have Deprived Her of Procedural Due Process.*

Petitioner alleges no facts to show that Respondents have deprived her of procedural due process. She has been issued a Notice to Appear before an Immigration Judge, and her merits hearing before the Immigration Judge has already commenced where she has been able to pursue her claims for relief from removal. Even if Respondent failed to provide Petitioner with any

18

required procedural protection, the remedy for such failure is not release from custody but a redo of the procedure Petitioner feels he was denied. *Mohammad*, 2016 U.S. Dist. LEXIS 190286, at *14 n.6 (citing *Achauatte v. Holder*, No. 4:11-CV-3977-VEH-JEO, 2012 U.S. Dist. LEXIS 82554, 2012 WL 2358185, at *3 (N.D. Ala. June 14, 2012)).

   4. *Petitioner Has Failed to State a Claim that the Parole Denial Violates the APA.*

Even if the Court were to consider the merits of Petitioner's APA claim, the record shows that ICE's decision was not arbitrary, capricious, or an abuse of discretion. ICE exercised its discretion and declined to release Petitioner. Petitioner points to ICE's internal policy guidelines to show that the agency acted in an arbitrary or capricious manner in denying her parole. An agency's internal personnel guidelines neither confer upon a petitioner substantive rights nor provide procedures upon which she may rely. *Loa-Herrera*, 231 F.3d at 989 (citing *Fano v. O'Neill*, 806 F.2d 1262, 1264 (5th Cir. 1987)). An agency memorandum merely articulates internal guidelines for agency personnel. *Id*. An agency memorandum does not establish judicially enforceable rights. *Id*. The binding case law in this Circuit is clear that Petitioner cannot rely on ICE internal policy memoranda to confer any judicially enforceable rights. Without any citation to law or regulations, Petitioner has failed to state a claim that her detention is in violation of the laws and regulations of the United States.

## IV. CONCLUSION

This case should be dismissed in its entirety under Rule 12(b)(1) because this Court lacks subject matter jurisdiction over these claims. Alternatively, if this Court finds that there is subject matter jurisdiction, Respondents move for dismissal under Rule 12(b)(6).

Respectfully submitted,

**JOHN F. BASH**
**UNITED STATES ATTORNEY**

By:   */s/ Liane Noble*
**LIANE NOBLE**
Assistant United States Attorney
Texas Bar No. 24079059
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
(512) 370-1252 (phone)
(512) 916-5854 (fax)
Liane.Noble@usdoj.gov

**LACY L. McANDREW**
Assistant United States Attorney
Florida Bar No. 45507
601 N.W. Loop 410, Suite 600
San Antonio, Texas  78216
(210) 384-7340 (phone)
(210) 384-7312 (fax)
Lacy.McAndrew@usdoj.gov

**ATTORNEYS FOR RESPONDENTS**

## CERTIFICATE OF SERVICE

I certify that on May 4, 2020, the foregoing instrument was filed and served electronically using the Court's CM/ECF system and was also served via e-mail to all counsel of record.

*/s/ Liane Noble*
Liane Noble
Assistant United States Attorney